IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| KELSEY WOLF, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff,*<br><br>v.<br><br>MID-AMERICA APARTMENT COMMUNITIES, INC.,<br><br>*Defendant.* | Class Action<br>Civil Action No. 2:24-cv-2586<br><br>Removed from:<br><br>Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis<br>No. CT-2771-24 |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE THAT** Defendant Mid-America Apartment Communities, Inc. ("MAA"), by and through its undersigned counsel, removes the above-captioned action from the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis, to the United States District Court for the Western District of Tennessee under 28 U.S.C. §§ 1441(a), 1446, and 1453, on the ground that federal jurisdiction exists under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d)(2)(A).[1]

### I.   BACKGROUND

1.  On July 2, 2024, plaintiff Kelsey Wolf, individually and on behalf of all others similarly situated, filed this action, captioned *Kelsey Wolf v. Mid-America Apartment Communities, Inc.*, in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis,

---

[1] The statements in this Notice of Removal are for the purposes of removal only. By the assertion or omission of any statement, MAA does not intend to waive and specifically reserves its rights to assert any defenses and/or objections which it may be entitled to assert through dispositive motion or otherwise.

No. CT-2771-24. A true and correct copy of the process and complaint received by MAA are attached as Exhibits 1 and 2, respectively. Plaintiff served process on July 18, 2024. Ex. 1.

2. Wolf brings one antitrust claim against MAA, alleging violations of Tenn. Code Ann. §§ 47-25-101 *et seq.* Ex. 2 ¶¶ 82-88. Specifically, she alleges that MAA conspired with other entities, including the software and data analytics company RealPage, Inc. ("RealPage"), to raise the price of "multifamily residential real estate leases in the State of Tennessee." *Id.* at 1, ¶¶ 4-14, 19. According to the complaint, MAA and other multifamily residential real estate providers used RealPage as a "mechanism" to share "competitively sensitive real-time pricing and supply levels" with each other, which RealPage allegedly used to "make unit-specific pricing and supply decisions" for MAA and other multifamily providers. *Id.* ¶¶ 3-4.

3. Wolf's claim mirrors a Tennessee-law antitrust claim brought against MAA in the *In re RealPage, Inc., Rental Software Antitrust Litigation No. II* multidistrict litigation. *See* No. 3:23-md-03071 (M.D. Tenn.) (the "*RealPage MDL Litigation*"). The *RealPage MDL Litigation* is comprised of multiple class action lawsuits filed against RealPage, MAA, and 44 other owners, operators, or managers of multifamily housing throughout the United States. The first such complaint was filed on October 18, 2022. After that, dozens of similar class action lawsuits were filed throughout the country. On April 10, 2023, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated those lawsuits in the United States District Court for the Middle District of Tennessee before the Honorable Waverly D. Crenshaw. *See In re RealPage, Inc., Rental Software Antitrust Litig.*, 669 F. Supp. 3d 1372 (J.P.M.L. 2023). Later that year, Judge Crenshaw appointed interim co-lead counsel, liaison counsel, and a steering committee to manage the litigation and represent the putative classes. Ex. 3.

4. The *RealPage MDL Litigation* plaintiffs allege that MAA and other multifamily residential real estate providers used "RealPage as the conduit" to "facilitate information exchanges and coordinate prices," thereby raising the "price of residential rental of real property units . . . in the State of Tennessee," in violation of Tenn. Code Ann. §§ 47-25-101 *et seq. See* Ex. 4 ¶¶ 37, 144-46, 750. That is the same claim, brought under the same Tennessee statute, on behalf of an overlapping class, as at issue in this case. And Wolf is a member of the putative class in the *RealPage MDL Litigation*.

5. Wolf rents an apartment from Mid-America Apartments, L.P., which is a subsidiary of MAA. Ex. 2 ¶ 15; Ex. 4 ¶ 144; Ex. 5.

6. Wolf seeks to represent a class of:

All persons and entities in the State of Tennessee that are direct purchasers of multifamily residential real estate leases from Defendant MAA or from a division, subsidiary, predecessor, agent, or affiliate of Defendant MAA, at any time during the period of October, 2016 to Present or until the Defendant MAA's unlawful conduct and its anticompetitive effects cease to exist.

Ex. 2 ¶ 73.

7. Wolf alleges that "[t]here are thousands of putative Class members." *Id.* ¶ 74.

8. Wolf seeks declaratory relief, injunctive relief, and damages in a "presently undetermined" amount of up to $75,000 per class member based on the difference between the rent paid and the rent that, in her view, would have been paid but for the alleged antitrust violations. *Id.* at 31-32, ¶ 88.

9. MAA has not yet filed an answer or responsive pleading to the complaint.

10. By filing this notice of removal, MAA does not waive, and expressly preserves, all of MAA's available rights, arguments, defenses, or objections.

11. After removal, MAA intends to move the JPML to consolidate this case before Judge Crenshaw in the *RealPage MDL Litigation.*

12. In addition, Wolf's lease contains a mandatory arbitration provision. Ex. 5 § 24.2 (agreeing "that we mutually choose binding arbitration instead of litigation to resolve all claims" (emphasis omitted)). MAA intends to invoke its right to arbitration and seek a stay of litigation following removal. *See* 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472 (2024). Arbitration "will proceed solely on an individual basis," and not as a class action, as would any litigation authorized by the lease. Ex. 5 § 24.3.

## II. CAFA'S JURISDICTIONAL REQUIREMENTS ARE SATISFIED

13. A notice of removal need only plausibly allege that CAFA confers federal subject-matter jurisdiction. *See* 28 U.S.C. § 1446(a) (requiring "a short and plain statement of the grounds for removal"); *see also Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88-89 (2014); *Clippinger v. State Farm Mut. Auto. Ins. Co.*, 2020 WL 6750357, at *3 (W.D. Tenn. Nov. 17, 2020). Moreover, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart*, 574 U.S. at 89; *see Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 287 (6th Cir. 2016) (stating that CAFA "should be read broadly, with a strong preference that interstate class actions should be heard in a federal court" (citation omitted)).

14. CAFA "provides that a federal district court has jurisdiction in a civil action where there is [minimal] diversity, 28 U.S.C. § 1332(d)(2)(A), the amount in controversy exceeds $5 million, § 1332(d), and the proposed class includes at least one hundred members, § 1332(d)(5)(B)." *Salling v. Budget Rent-A-Car Sys., Inc.*, 672 F.3d 442, 443 (6th Cir. 2012). In addition, some courts require the party invoking jurisdiction under CAFA to plead that not all the primary defendants are states, state officials, or other government entities. *See* 28 U.S.C.

§ 1332(d)(5)(A); *see also Meiman v. Kenton County*, 2011 WL 350465, at *4 & n.2 (E.D. Ky. Feb. 2, 2011) (collecting cases). All four requirements are satisfied here.

      A.      **Minimal Diversity Exists Under 28 U.S.C. § 1332(d)(2)(A)**

15. CAFA's minimal-diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *see Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 406 (6th Cir. 2008).

16. MAA is a corporation that is incorporated in the State of Tennessee. Ex. 6 ¶ 3.

17. MAA's headquarters and principal place of business is in Tennessee. *Id.* ¶ 4.

18. MAA is a Tennessee citizen for purposes of § 1332. *See* 28 U.S.C. § 1332(c)(1) (stating that "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business," save for exceptions not relevant here).

19. The putative class of "persons and entities in the State of Tennessee that are direct purchasers of multifamily residential real estate leases" from MAA "at any time" since October 2016, Ex. 2 ¶ 73, includes at least three categories of non-Tennessee citizens: (a) business entities organized and headquartered elsewhere; (b) persons who reside or resided in Tennessee while remaining citizens of other states; and (c) persons who may once have been Tennessee citizens but have since moved to—and become citizens of—other states.

20. *First*, the putative class includes "entities" who leased from MAA that are not Tennessee citizens. Ex. 2 ¶ 73; *see Larsen v. Pioneer Hi-Bred Int'l, Inc.*, 2007 WL 3341698, at *4-5 (S.D. Iowa Nov. 9, 2007) (class of "persons and entities in the state of Iowa . . . who purchased" the defendant's seeds included "out-of-state corporations with out-of-state addresses").

21. CWS Corporate Leasing LLC (CWS) is a Limited Liability Company organized under the Laws of Delaware with its headquarters and principal place of business in Texas. Ex. 7.

22. A limited liability company is "an unincorporated association" as that phrase appears in 28 U.S.C. § 1332(d)(10). *See City of E. St. Louis v. Netflix, Inc.*, 83 F.4th 1066, 1071 (7th Cir. 2023); *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 700 (4th Cir. 2010).

23. Under 28 U.S.C. § 1332(d)(10), an unincorporated association is "a citizen of the State where it has its principal place of business and the State under whose laws it is organized."

24. CWS is therefore a citizen of Delaware and Texas for purposes of CAFA. *See Eagles Nest, LLC v. Moy Toy, LLC*, 2014 WL 4655277, at *5-6 (M.D. Tenn. Sept. 16, 2014).

25. CWS is a member of the putative class because it leased multifamily residential real estate in Tennessee from MAA between October 2016 and the present. Ex. 6 ¶ 12.

26. Accordingly, minimal diversity exists because CWS is a citizen of a different state than MAA. *See* 28 U.S.C. § 1332(d)(2)(A).

27. *Second*, the putative class includes persons who reside or resided in Tennessee while remaining citizens of other states.

28. Under 28 U.S.C. § 1332, citizenship "is equated with domicile." *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990). Domicile requires both "residence in" a state "and the intention to remain there." *Id.* A person's domicile, moreover, "is not lost until a new one is acquired." *Id.*

29. Between 2017 and 2023, MAA leased multifamily residential real estate in Tennessee to persons who applied from other states and returned there when their leases expired. Ex. 6 ¶ 9. Putative class members who were citizens of a different state when they moved into Tennessee but who do not intend to remain in Tennessee are not Tennessee citizens. *See Bishop v. Hamya, Inc.*, 2017 WL 684243, at *2 (M.D. Tenn. Jan. 12, 2017) (temporary resident not a Tennessee citizen); *see also Kosieradzki v. Eversource Serv. Energy Co.*, 2021 WL 1227571, at

*7 (D. Conn. Apr. 1, 2021) ("Not every homeowner in the State of Connecticut is domiciled there . . . ."). And any inference of citizenship is especially weak here, both because renters are more transient than homeowners, and because the class includes those who have since left Tennessee and thus are no longer even Tennessee residents. *See Saunders v. Sappi N. Am., Inc.*, 2021 WL 5984996, at *7 (D. Me. Dec. 16, 2021) (noting that "continuous[]" residence and property ownership bear on the domicile inquiry).

30. For example, MAA leased an apartment in Tennessee to an individual who listed an address with an Illinois Zip Code on their rental application in 2018 and listed an Illinois address in that same Zip Code as their forwarding address when they moved out in 2019. Ex. 6 ¶ 10.

31. As another example, MAA leased an apartment in Tennessee to an individual who listed an address with a Missouri Zip Code on their rental application in 2017 and listed a Missouri address in that same Zip Code as their forwarding address when they moved out in 2019. Ex. 6 ¶ 11.

32. These are just two examples of many similar renters from MAA in Tennessee—people who moved to Tennessee temporarily but, based on their brief time in the state, had no intent to remain in Tennessee indefinitely, and thus never became Tennessee citizens in the first place.

33. *Third*, the putative class includes persons who may once have been Tennessee citizens but have since moved to—and become citizens of—other states.

34. Over 40% of the lessees of MAA's multifamily residential real estate units moved out each year from 2019 to 2023. Ex. 6 ¶ 13. Some of MAA's Tennessee lessees took up residence in other states after leaving MAA's Tennessee properties. *Id.* ¶ 8

35. Lessees who moved from Tennessee to a different state with the intent to remain there are diverse from MAA for purposes of CAFA, regardless of whether they left immediately after their leases with MAA expired or at some later time between then and July 2024, when Wolf filed her complaint. *See* 28 U.S.C. § 1332(d)(7) (citizenship of putative class members determined "as of the date of filing of the complaint").

36. Accordingly, minimal diversity exists because at least one member of the putative class is a citizen of a different state than MAA. *See* 28 U.S.C. § 1332(d)(2)(A).

**B. In The Alternative, Minimal Diversity Also Exists Because Wolf Artfully Pleaded Her Claim To Avoid CAFA**

37. A plaintiff cannot prevent removal by gerrymandering her claims "to avoid the clear purpose of CAFA." *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 406 (6th Cir. 2008) (upholding removal of collection of state-court suits "with identical parties and claims" covering "different, sequential six-month periods," each of which sought $4.9 million in damages).

38. As relevant here, a plaintiff cannot "plead around the minimal diversity requirement of CAFA" by omitting diverse parties that are "already before the court" in related federal multidistrict litigation. *Simon v. Marriott Int'l, Inc.*, 2019 WL 4573415, at *4 (D. Md. Sept. 20, 2019); *see Sanders v. Kia Am. Inc.*, 2023 WL 3974966, at *4-5 (C.D. Cal. June 13, 2023) (appropriate to look "beyond the pleadings" when "the claims in both actions entirely overlap").

39. Wolf's Tennessee antitrust claim "entirely overlap[s]" with the claims at issue in the *RealPage MDL Litigation*. *Sanders*, 2023 WL 3974966, at *4.

40. Both Wolf and the *RealPage MDL Litigation* plaintiffs allege that RealPage orchestrated a conspiracy among lessors of multifamily residential real estate through their use of RealPage's revenue management software. *Compare* Ex. 2 ¶¶ 3-14, 35-50, *with* Ex. 4 ¶¶ 1-8, 144-46, 227-54, 287-312. Wolf and the *RealPage MDL Litigation* plaintiffs further allege that this

behavior inflated the price of multifamily residential real estate leases in Tennessee, in violation of Tenn. Code Ann. §§ 47-25-101, *et seq. Compare* Ex. 2 ¶ 82, *with* Ex. 4 ¶ 750.

41. Wolf is also a member of the putative class in the *RealPage MDL Litigation*, which includes all "persons . . . who paid rent on at least one multifamily residential real estate lease" to a defendant that used RealPage's "pricing software and/or lease renewal staggering software." Ex. 4 ¶ 681; *see* Ex. 2 ¶¶ 4, 68-70 (alleging that MAA used RealPage's "software and data analytics," including "pricing software").

42. Wolf acknowledges that the "facts and claims" in this suit are already at issue in "cases filed in various federal courts in the United States" against RealPage and other lessors of multifamily residential real estate. Ex. 2 ¶ 19. As the Judicial Panel on Multidistrict Litigation found, these cases "share factual questions arising from alleged collusion by RealPage and numerous lessors of multifamily residential real estate across the country" that warrant consolidation for pretrial proceedings in the U.S. District Court for the Middle District of Tennessee. *In re RealPage*, 669 F. Supp. 3d at 1373-74.

43. Although Wolf declined to name RealPage as a defendant in this case, she had "no colorable basis" to ignore it. *Freeman*, 551 F.3d at 406.

44. RealPage stands at the center of the alleged conspiracy because, in Wolf's view, RealPage's software "serves as the mechanism by which [MAA] and Lessors collude and avoid competition." Ex. 2 ¶ 4. Indeed, Wolf's complaint mentions RealPage 156 times, far exceeding the references to "Defendant" (81 times) or "MAA" (just 44 times).

45. Because RealPage was "'an active participant' in the allegations made in the complaint that are 'critical to the disposition of the important issues in the litigation,'" it is a

necessary party under Tenn. R. Civ. P. 19.01 and Fed. R. Civ. P. 19. *Laker Airways, Inc. v. British Airways, PLC*, 182 F.3d 843, 848 (11th Cir. 1999) (citation omitted).

46. Wolf's decision not to join as a defendant a necessary party that appears front and center in her allegations confirms that she drafted her complaint "in a transparent effort to avoid federal jurisdiction." *Simon*, 2019 WL 4573415, at *4.

47. Allowing parallel state-court litigation of "overlapping claims" about the use of RealPage's rental software would also undermine the "multistate or national interest[]" in resolving the legality of that conduct—which occurred throughout the country—in a single, federal forum. *In re Kitec Plumbing Sys. Prods. Liab. Litig.*, 2010 WL 11618052, at *7 (N.D. Tex. Aug. 23, 2010).

48. The Court can therefore consider RealPage's citizenship in evaluating whether minimal diversity exists. *See Simon*, 2019 WL 4573415, at *4; *Sanders*, 2023 WL 3974966, at *4.

49. RealPage is a corporation incorporated in Delaware with headquarters in Texas. Ex. 4 ¶ 61.

50. Wolf is "a citizen of the State of Tennessee." Ex. 2 ¶ 15.

51. Accordingly, minimal diversity exists because at least one member of the putative class is a citizen of a different state than RealPage. *See* 28 U.S.C. § 1332(d)(2)(A).

    **C.**    **The Amount In Controversy Exceeds $5,000,000**

52. Under CAFA, the claims of the individual class members are aggregated to determine whether the amount in controversy exceeds the required "sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2), (d)(6); *see Sevier Cnty. Schs. Fed. Credit Union v. Branch Banking & Tr. Co.*, 2019 WL 13292900, at *2-3 (E.D. Tenn. June 12, 2019).

53. Although MAA denies the claim alleged in Wolf's complaint and further denies that Wolf, or any putative class member, is entitled to any monetary or other relief, on a classwide basis or otherwise, the amount in controversy here satisfies the jurisdictional threshold.

54. Wolf alleges that the use of RealPage results in "rental rate improvements, year over year, between 5% and 12% in every market." Ex. 2 ¶ 12; *see id.* ¶ 12 (alleging "price increases for residential leases, as high as 14.50% in some markets"). She also alleges that the challenged conduct "increas[ed] prices above competitive levels by 7 percent each year." *Id.* ¶ 53.

55. MAA's total revenue from the rental of multifamily residential real estate in Tennessee between 2017 and 2023 (inclusive) exceeded $700 million. Ex. 6 ¶ 7.

56. Assuming solely for purposes of this removal notice that the challenged conduct caused MAA's revenue to increase by 5% (the low end of the estimate in Plaintiff's complaint), MAA's revenue in the absence of that conduct would have been roughly $667 million (($700 million) / (1.05)), which means there is at least $33 million in controversy ($700 million – $667 million). *See Reagan v. ArcelorMittal*, 2012 WL 1023107, at *3 (E.D. Tenn. Mar. 26, 2012) (more than $5 million at stake where plaintiff's complaint "allege[d] that defendant's anti-competitive conduct inflated the prices of steel products" by at least 14%, and defendants sold steel worth at least $400 million in Tennessee).

57. Wolf further alleges that one of MAA's co-conspirators "and others" used RealPage "to raise pricing $450 to $200 per unit on a lease turn." Ex. 2 ¶ 57.

58. Between 2017 and 2023, MAA operated at least 6,000 multifamily residential real estate units in Tennessee. Ex. 6 ¶ 5. The occupancy rate of these units was at least 90% during this time. *Id.* ¶ 6.

59. Based on these figures, the amount in controversy is at least $7,560,000 ($200 per unit per year) *x* (6,000 units) *x* (90% occupancy) *x* (7 years)).

60. The amount in controversy accordingly exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2), (d)(6).

61. Nothing in Wolf's complaint suggests—much less proves—that $5 million or less is at stake. *See Evans v. AMISUB (SFH), Inc.*, 2017 WL 9807437, at *2 (W.D. Tenn. Dec. 8, 2017) ("Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction." (citation omitted)).

62. To the contrary, a class of "thousands," each with damages that "do not individually exceed $75,000.00," could yield an award of $75 million or more ((1,000) *x* ($75,000)). Ex. 2 ¶¶ 74, 88.

     **D.**    **This Case Is A Putative Class Action Comprising At Least 100 Members**

63. Wolf seeks to represent a "class" under Tennessee Rule of Civil Procedure 23.01. Ex. 2 ¶ 73. This case is therefore a "class action" as defined in 28 U.S.C. § 1332(d)(1)(B). *See Reagan*, 2012 WL 1023107, at *1-2.

64. The class includes at least 100 members; indeed, Wolf claims that it contains "thousands." Ex. 2 ¶ 74.

     **E.**    **No Primary Defendant Is A State, State Official, Or Other Governmental Entity**

65. MAA is a publicly held corporation. Ex. 6 ¶ 3.

66. Neither MAA (the only named defendant) nor RealPage (a necessary party) is a State, a State official, or a governmental entity.

67. Accordingly, no "primary defendants are States, State officials, or other governmental entities." 28 U.S.C. § 1332(d)(5)(A).

12

\*     \*     \*

68. In sum, because this is (1) a putative class action comprising 100 or more members, (2) in which at least one member of the putative class is a citizen of a state different from MAA's state of citizenship and, in the alternative, in which minimal diversity exists in light of Wolf's artful pleading to avoid jurisdiction under CAFA, (3) the aggregate amount of damages sought exceeds $5 million, and (4) no defendant is a government entity, this case falls within the subject-matter jurisdiction of this Court under 28 U.S.C. § 1332(d) and is therefore removable under 28 U.S.C. § 1441.

### III. OTHER STATUTORY REQUIREMENTS FOR REMOVAL ARE SATISFIED

69. Wolf filed this action in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis. Venue is proper in the United States District Court for the Western District of Tennessee because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

70. MAA has not previously removed this case.

71. As required by 28 U.S.C. § 1446(a), copies of all process and pleadings served upon MAA are attached as exhibits hereto.

72. This notice of removal is timely under 28 U.S.C. § 1446(b)(1) (requiring, as relevant here, that a notice of removal of a civil action be filed within 30 days after the defendant receives, "through service or otherwise," a copy of the summons and complaint); *see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

73. As required by 28 U.S.C. § 1446(d), MAA will promptly file a copy of this Notice of Removal with the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis and serve copies on all parties to this action. A true and correct copy of the Notice of Filing Notice of

13

Removal that MAA is filing with the Circuit Court of Shelby County is attached hereto as Exhibit 8.

74. MAA's Tennessee citizenship is no barrier to removal because a class action "may be removed" under CAFA "without regard to whether any defendant is a citizen of the State in which the action is brought." 28 U.S.C. § 1453(b).

WHEREFORE, MAA respectfully removes this action from the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis, No. CT-2771-24, to this Court.

DATED:  August 16, 2024                        Respectfully submitted,

*/s/ John R. Branson*
John R. Branson (BPR No. 10913)
Kelsey W. McKinney (BPR No. 40434)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
First Horizon Building
165 Madison Avenue, Suite 2000
Memphis, TN 38103
Telephone: (901) 526-2000
jbranson@bakerdonelson.com
kmckinney@bakerdonelson.com

Britt M. Miller (IL Bar No. 6256398)
(*pro hac vice application forthcoming*)
Daniel T. Fenske (IL Bar No. 6296360)
(*pro hac vice application forthcoming*)
Matthew D. Provance (IL Bar No. 6300603)
(*pro hac vice application forthcoming*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 782-0600
bmiller@mayerbrown.com
dfenske@mayerbrown.com
mprovance@mayerbrown.com

*Counsel for Defendant Mid-America Apartment Communities, Inc.*

## CERTIFICATE OF SERVICE

Under Local Rule 11.2.2, the undersigned certifies that on August 16, 2024, the foregoing Notice of Removal and attachments thereto were electronically filed with the Clerk of the Court using the CM/ECF system and that copies were sent by email and first-class U.S. mail to counsel for Wolf at the address and email address below:

Alan G. Crone
W. Patrick Crone
88 Union Avenue (13th Floor)
Memphis, TN 38103
acrone@cronelawfirmplc.com
pcrone@cronelawfirmplc.com

Thomas J. H. Brill
8012 State Line Road Ste 102
Leawood, KS 66208
brillkc@gmail.com

/s/ *John R. Branson*
John R. Branson